**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br>Jake's Granite Supplies, L.L.C.,<br><br>            Debtor.<br>_____<br><br>Jake's Granite Supplies, L.L.C., an Arizona Limited Liability Company,<br><br>            Appellant,<br><br>vs.<br><br>John and Vicki H. Beaver dba Buckeye Ranch, L.L.C., husband and wife; Buckeye Ranch, L.L.C., an Arizona limited liability company,<br><br>            Appellees.<br>_____ | No. CV-10-00083-PHX-GMS<br><br>BK No. 2:05-bk-10601-RJH<br>Adv. No. 2:07-ap-00145-RJH<br><br>**ORDER** |

Currently pending before the Court is Debtor's Appeal from the Arizona Bankruptcy Court's Second Amended Final Judgment entered on January 25, 2010. (Doc. 17, Ex. C). After reviewing the pleadings and record excerpts submitted for purposes of this appeal, and having determined that oral argument is unnecessary,[1] the Court affirms the judgment for the following reasons.

---

[1] Appellant's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

Appellant, Jake's Granite Supplies ("Jake's"), is an Arizona limited liability company. Jake's filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 13, 2005 (the "petition date"). (Doc. 17, Ex. D). As of the petition date, Jake's was the title owner of certain real property associated with its sand and gravel mining operation. The property included the following parcels: Quackenbush (~120 acres), Stone (~40 acres), and Dycus (~40 acres). (*Id.*). Jake's acquired title to the parcels by three separate deeds, all of which were recorded on October 12, 2004. In connection with its acquisition of the parcels, Jake's also obtained an "ALTA/ASCM Land Title Survey" (the "Survey"), in July 2004. (*Id.*). The Survey provided that, "[t]he premises surveyed have no known discrepancies, boundary line conflicts, encroachments, overlapping of improvements, easements or right-of-ways except as shown, and has access to or from a dedicated roadway." (Doc. 17, Ex. D).

The Beavers, husband and wife, owned approximately 460 acres of flood damaged land known as "Buckeye Ranch," which was located adjacent to the disputed parcels. (Doc. 17, Ex. D). The Beavers are claimants in Jake's Chapter 11 case and assert that they adversely possessed portions of Jake's property. (Doc. 17, Ex. A). The disputed parcels are located within a river floodway, and the Beavers contend that they used the property primarily for grazing and farming during the adverse possession period.

Several months after Jake's petition date, the Bankruptcy Court approved the sale of substantially all of Jake's assets associated with its sand and gravel mining operation, including the disputed parcels, to Cemex Construction Materials, L.P. (Doc. 17, Ex. D). The transaction closed on November 27, 2005. In the course of the Cemex Transaction, Jake's became aware of the Beavers' adverse possession claim to portions of the parcels. As a result, the Bankruptcy Court conditioned its approval of the Cemex Transaction on the proceeds of the sale being escrowed pending further order, and further directed that whatever interest the Beavers had in the disputed parcels attach to the proceeds of the Cemex Transaction. On March 20, 2006, Jake's objected to the Beavers' claims, asserting that the Beavers had failed

- 2 -

1  to meet the legal requirements to obtain title by adverse possession, to specifically quantify
2  the real property to which their claim relates, and to properly value the real property
3  implicated by the claim.

4      At issue before the Bankruptcy Court was how to determine the statutory period for
5  adverse possession when a bankruptcy case is filed prior to the end of the ten-year statutory
6  period. The court found this issue moot in the present case because, with the exception of the
7  Quackenbush Pasture, which was fenced in September 1995, the rest of the parcels were all
8  fenced prior to April 1995, more than ten years before Jake's petition date of June 13, 2005.
9  The court did note, however, that the outcome would be the same if they had calculated a
10 twelve-year period backward from April 2007 because of the two-year extension granted to
11 actions commenced by the debtor under §108(a) of the Bankruptcy Code.[2]

12     Accordingly, the Bankruptcy Court found that, "for the requisite statutory period, the
13 Beavers adversely possessed 10.03 acres of the real property formerly owned by Jake's and
14 ordered sold free and clear of all liens to Cemex Construction Materials, L.P., pursuant to the
15 Court's Order entered November 23, 2005." (Doc. 17, Ex. C). Specifically, the adversely
16 possessed property included 4.02 acres of Dycus Field, 4.11 acres of Dycus Pasture, .80 acres
17 of Stone Parcel, and 1.10 acres of Quackenbush Field. (*Id.*). The court did not find
18 Quackenbush Pasture to be adversely possessed because the requisite statutory period was not
19 satisfied with respect to that parcel.

20     The court further held that the property had a value of $30,000.00 per acre as of
21 November 23, 2005, for a total value of $300,900.00. Accordingly, the Bankruptcy Court

---

23     [2] 11 U.S.C.A. §108(a) states, "[i]f applicable nonbankruptcy law, an order entered in
24 a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may
25 commence an action, and such period has not expired before the date of the filing of the
petition, the trustee may commence such action only before the later of –
26     (1) the end of such period, including any suspension of such period occurring on or
after the commencement of the case; or
27     (2) two years after the order for relief."

28

1  ordered judgment in favor of the Beavers in the amount of $300,900.00, with interest at the
2  rate of seven percent (7%) per year accruing from November 23, 2005, until paid in full.
3  Jake's appeals from the Bankruptcy Court's final judgment both with respect to the adverse
4  possession finding and the valuation of the disputed parcels.

## DISCUSSION

### I. Legal Standard

Under 29 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges. The Court reviews a bankruptcy court's conclusions of law *de novo,* and its findings of fact under the clearly erroneous standard. *Greene v. Savage*, 583 F.3d 614, 618 (9th Cir. 2009); FED. R. BANKR. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). The clearly erroneous standard requires the Court to accept a bankruptcy court's findings of fact "unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *See Latman v. Burdette,* 366 F.3d 774, 781 (9th Cir. 2004) (citing *In re Banks*, 263 F.3d 862, 869 (9th Cir. 2001)). The Court must review the evidence on record in the light most favorable to the prevailing party. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991).

### II. Analysis

#### A. Adverse Possession Finding

Applying the clearly erroneous standard of review, the Bankruptcy Court did not err in determining that the Beavers' adversely possessed the subject property. Under Arizona law, a party claiming title, or in this case compensation, for real property by adverse possession must show that his or her possession was exclusive, actual, open and notorious, hostile, under a claim of right, and continuous for the statutory period of ten years. A.R.S. §§12-521, 12-526 (2010); *see also Spaulding v. Pouliot*, 218 Ariz. 196, 201, 181 P.3d 243, 248 (Ct. App. 2008); *Berryhill v. Moore*, 180 Ariz. 77, 82, 881 P.2d 1182, 1187 (Ct. App. 1994); *Lewis v. Pleasant*

- 4 -

*Country*, 173 Ariz. 186, 189, 840 P.2d 1051, 1054 (Ct. App. 1992).  The question of whether a claimant has established the elements of adverse possession is "one of fact which must be determined from the circumstances of each case." *Kay v. Biggs*, 13 Ariz. App. 172, 175, 475 P.2d 1, 4 (Ct. App. 1970). Based on the Bankruptcy Court's factual determinations, the Beavers satisfied the enumerated elements of adverse possession.

First, the Bankruptcy Court found that the Beavers' complete enclosure of the parcels by fencing established the requisite exclusivity. As a general rule, enclosure coupled with the claimant's mere general use of property within the enclosure is sufficient to prove adverse possession without requiring proof of other specific acts that would "fly the flag" over the disputed land, but only if the enclosure is complete. *See, e.g.*, *Berryhill*, 180 Ariz. at 84, 881 P.2d at 1189; *Whitemore v. Amator*, 148 Ariz. 173, 175, 713 P.2d 1231, 1233 (1986). The Bankruptcy Court found that the parcels, used here primarily for grazing and farming, were "completely enclosed." (Doc. 17, Ex. B). Therefore, the court did not commit clear error by concluding that the Beavers' use of the parcels was exclusive.

Second, the Bankruptcy Court found that the Beavers' adverse possession of the property commenced under a claim of right because there was sufficient evidence of the Beavers' intent to exercise possession and dominion of the property, whether by mistake or not. "A claim of right is nothing more than the intention of the party in possession to appropriate and use the land as his own to the exclusion of others irrespective of any semblance or shadow of actual title or right." *Higginbotham v. Kuehn*, 102 Ariz. 37, 38, 424 P.2d 165, 166 (1967); *see also Chandler v. Jackson*, 148 Ariz. 307, 312, 714 P.2d 477, 482 (Ct. App. 1986); *Berryhill*, 180 Ariz. at 83, 881 P.2d at 1188 (finding that the intention of the adverse claimant, and not the mistake, is the test by which the character of the possession is determined). Therefore, the bankruptcy judge did not clearly err in concluding that the Beavers possessed the land under a claim of right.

The open and notorious element of adverse possession requires that the acts of ownership must be of the character so as to indicate to the community in which the land is

1  situated that it is in the exclusive possession and enjoyment of the claimant. *U.S. on Behalf*
2  *of Zuni Tribe of N.M. v. Platt*, 730 F.Supp. 318 (D. Ariz. 1990) (citing 2 C.J.S. Adverse
3  Possession §50 at 714 (1972)). There must be physical facts which openly evince and give
4  notice of an intent to hold the land in hostile dominion and indicate to a prudent owner that
5  an adverse claim is being asserted. *Conwell v. Allen*, 21 Ariz. App. 383, 385, 519 P.2d 872,
6  875 (Ct. App. 1974). Appellants contend that the Beavers' possession was not open and
7  notorious because the fencing around the disputed parcels was difficult to get to because of
8  dense trees, bushes, and the fact that the area was landlocked. (Doc. 16). While recognizing
9  the difficulty of accessing the fence, the Bankruptcy Court reasoned that the open and
10 notorious element is satisfied because "anyone who gets to the boundary of the adversely
11 possessed property would see the fence." (Doc. 17, Ex. B). Arizona law is clear that an
12 adverse claimant need not take any particular type of occupancy to demonstrate possession
13 and need only show that he "occupied or used the land as would an ordinary owner of the
14 same type of land taking into account the uses for which the land was suitable.*" Rorebeck v.*
15 *Criste*, 1 Ariz. App. 1, 5, 398 P.2d 678, 682 (Ct. App. 1965) (citing *Norgard v. Busher*, 220
16 Or. 297, 349 P.2d 490 (1960)). Applied here, the fence erected by the Beavers was coupled
17 with the grazing of cattle and irrigation of the property, all of which together served as notice
18 to Appellants that the Beavers were treating the property in a suitable manner and, notably,
19 as their own. *Cf. id.* (holding that occupancy was open and notorious where "fence was an
20 apparent separation of property for all the world to see" and "grazing of the cattle, irrigation,
21 and leasing of the property was notice to the world and particularly to the defendants that the
22 plaintiff and her predecessors were treating this property as their property..."). This Court has
23 found no binding authority suggesting that the open and notorious element of adverse
24 possession cannot be satisfied where the title owner can not *easily* access adverse claimant's
25 fencing due to natural obstruction. Therefore, the Bankruptcy Court did not clearly err in its
26 factual determination on the open and notorious element.

27
28

In their appeal of the Bankruptcy Court's Second Amended Final Judgment the parties do not contest the element of actual possession. To constitute actual possession, "neither actual occupancy nor cultivation nor residence is necessary." *Platt*, 730 F. Supp. at 322. In fact, what acts may or may not constitute actual possession are "necessarily varied and . . . depend upon the circumstances of the case." *Higginbotham*, 102 Ariz. at 38, 424 P.2d at 166. The Beavers' actual possession of the disputed parcels was evidenced through the uncontroverted fact that they cleared the land of dense brush and fenced it for livestock grazing.

Moreover, to prove hostility, the adverse claimant must claim exclusive right to the land and "den[y] (by word or act) the owner's title." *Rorebeck*, 1 Ariz. App. at 3–4, 398 P.2d at 680–81. The possession must be hostile, not only as against the true owner, but as against the world. *Gunther & Shirley Co. v. Presbytery of L.A.*, 85 Ariz. 56, 331 P.2d 257 (1958). Applied here, the Beavers' possession was hostile because it was exclusive by virtue of complete enclosure through fencing. Thus, the fencing was notice to the world and particularly to Appellants that the Beavers were treating the property as their own. *See, e.g., Rorebeck*, 1 Ariz. App. at 4, 398 P.2d at 681 (finding that existence of fence was a visible indication of a possession hostile to the defendants and to the world).

Appellants argue that Beavers' silence on three separate occasions functions as an implicit acknowledgment of Jake's superior ownership and hence undermines the hostility requirement. However, this proposition is not convincingly supported. Appellants rely on *Combs v. DuBois*, in which the adverse claimant verbally acknowledged that the disputed property was not theirs by indicating that they would treat the property "like it was my own." 135 Ariz. 465, 467, 662 P.2d 140,142 (Ct. App. 1982). The present case is clearly distinguishable from *Combs* because there was no verbal acknowledgment by the Beavers of Jake's superior ownership rights. Equally lacking was any sort of act by the Beavers that would indicate such an acknowledgment. Therefore, Appellant's contention that the Beavers' silence equates to acknowledgment of Jake's superior ownership must fail.

Adverse possession is normally based on a ten-year statute of limitations period by which the party that holds title to the subject property must commence action to recover land from the person in possession. A.R.S. §12-526(A). However, where the ten-year limitations period has not expired before the petition date in a bankruptcy proceeding, the statute of limitations is extended to the later of either 1) the end of the ten-year period, or 2) two years from the bankruptcy petition. Bankruptcy Code 11 U.S.C. §108(a). Applied here, the Bankruptcy Court correctly concluded that because the adverse possession period for all of the parcels, with the exception of the Quackenbush Pasture, began no later than April 1995, the ten-year statute of limitations period had expired by April 2005, before Jake's petition date of June 13, 2005. As for the Quackenbush Pasture, the court correctly concluded that the facts did not support adverse possession because Jake's objected to the Beavers' claim with respect to this particular parcel within the 12-year extended statute of limitations period afforded under §108(a).

As part of their argument regarding Appellee's failure to prove the elements of adverse possession, Appellants also claim that the Beavers failed to prove by clear and positive evidence the boundaries and area of the disputed property. However, in demonstrating the boundaries and area, the Beavers relied on an aerial photo which was stipulated to by Appellants. The Bankruptcy Court recognized that the aerial photo was "prone to inaccuracy" because of its one inch to 100 feet scale, but accepted it as the means for determining the precise acreage of the parcels. (Doc. 17, Ex. B). Appellants have not met their burden of proving that the Bankruptcy Court's reliance on the aerial photo to determine the precise acreage was clearly erroneous and have not preserved any objections to the photo being admitted into evidence.

Accordingly, the Bankruptcy Court's determination that the Beavers' possession of the disputed parcels met the elements of adverse possession was not clearly erroneous.

**B. Mr. Beaver's testimony regarding boundaries and acreage of property**

The Court reviews a bankruptcy court's evidentiary rulings for abuse of discretion. *Latman*, 366 F.3d at 786. Abuse of discretion is demonstrated if a decision is "based on an erroneous conclusion of law or when the record contains no evidence on which [the trial court] rationally could have based that decision." *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988) (quoting *In re Hill*, 775 F.2d 1037, 1040 (9th Cir. 1985)).

Appellants contend that the Bankruptcy Court erred in admitting Mr. Beaver's testimony regarding the acreage and boundary lines because it was both hearsay and incompetent. Specifically, they argue that "Mr. Beaver's understanding of the location of his property boundaries and corners is based upon hearsay staking and surveys performed by persons who did not testify at trial." (Doc. 16). The bankruptcy judge admitted into evidence, over Jake's hearsay objections, photos of the survey stakes and land survey on which Mr. Beaver relied in his testimony.

Appellant's have failed to meet their burden of proving that the bankruptcy judge's admission of Mr. Beaver's testimony and reliance on the survey and photo evidence rises to an abuse of discretion. Appellants stipulated to the admission of the aerial photo into evidence, and have not preserved any grounds on which to object to its admission to this Court. The Bankruptcy Court's final judgment indicates that while the judge agreed that the aerial photo relied on to determine the exact acreage of the disputed parcels was "prone to inaccuracy," "it doesn't fall so low to the level of mere speculation," and it was the only available evidence. (Doc. 17, Ex. B). Appellants have not put forth viable arguments for reversing the bankruptcy judge's determination.

Further, Appellant's competency argument also fails. During trial, the bankruptcy judge had an opportunity to examine the demeanor and assess the competency of Mr. Beaver. As a result, the judge, in referring to Mr. Beaver's testimony states, "I think he did a pretty good job, so I'll accept the acreage." (Doc. 17, Ex. B). The bankruptcy judge did not abuse his discretion in determining that Mr. Beaver was qualified to testify as to what he believes the boundaries of his property to be. *See, e.g.*, *Brown v. Dorfman*, 251 Or. 522, 446 P.2d 672

1  (1968) (holding that a landowner need not be instructed by a registered surveyor before he can
2  testify to the location of a boundary on his land). Thus, this Court does not find the
3  Bankruptcy Court abused its discretion in admitting Mr. Beaver's testimony.

### C. Valuation of the land

In their joint pre-trial statement the parties stipulated to the valuation date of the disputed parcels as November 27, 2005, the sale date of the parcels to Cemex. In its judgment, the Bankruptcy Court emphasized the difficulty of determining the value of the adversely possessed property on this date without the benefit of appraisal testimony. The court then considered several pieces of admitted evidence in estimating the value of the property.

First, the court considered and rejected the July 2006 sale by the Beavers to United Metro at $60,000 per acre because roughly half of that property was irrigated farm land located at a higher elevation than the disputed land, which is located in a floodway. The court also considered and rejected Jake's 2004 purchase of the property at $6,500 per acre for Dycus, $7,500 per acre for Stone, and $13,333 per acre for Quackenbush because the land was not exactly comparable and it was a year earlier than the stipulated valuation date. Finally, the court considered Mr. Beaver's own estimation of the value of the property at $50,000 per acre. The court ultimately valued the parcels at $30,000 per acre, which is "the upper end of what Jake's offered to purchase [the] property and significantly below the $60,000 and the $50,000 that Mr. Beaver contends for." (Doc. 17, Ex. B).

While Appellant contends that no plausible evidence supports the court's valuation of the disputed property at $30,000 per acre, the record suggests that the Bankruptcy Court's factual determination of the property value was based on available, albeit imperfect, indicators. Accordingly, this Court is not left with a "definite and firm conviction" that the Bankruptcy Court made a mistake in determining the value of the adversely possessed property. *See Latman*, 366 F.3d at 781. When the record is examined in the light most favorable to the prevailing party, it is apparent that it contains nothing that mandates a finding that the Bankruptcy Court's conclusion was clearly erroneous.

- 10 -

**CONCLUSION**

For the reasons explained above, the Bankruptcy Court's decision below is affirmed with respect to the Beaver judgment. Accordingly,

**IT IS HEREBY ORDERED** that those aspects of the January 25, 2010 Second Amended Final Judgement of the Bankruptcy Court (Doc. 17, Ex. C) that find that the Beavers adversely possessed 10.03 acres of the real property formerly owned by Jake's and that enter judgement against Jake's in the amount of $300,900.00 with interest thereon at the rate of seven percent (7%) per year, are **AFFIRMED**.[3]

DATED this 13th day of December, 2010.

*H. Murray Snow*
G. Murray Snow
United States District Judge

---

[3] In a companion order, the Court vacates and remands for further proceedings that part of the Bankruptcy Court's Second Amended Final Judgment (Doc. 17, Ex. C), awarding Defendants SNS Civil Design Consultants, Inc. dba SNS Civil Design Group, Kimball R. Siegfried and Eileen Siegfried attorneys' fees and costs.