**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br>Jake's Granite Supplies, L.L.C.,<br>          Debtor.<br>_____<br>Jake's Granite Supplies, L.L.C., an Arizona Limited Liability Company,<br>          Appellant,<br>vs.<br>SNS Civil Design Consultants, Inc., an Arizona corporation dba SNS Civil Design Group; Kimball R. Siegfried and Eileen Siegfried, husband and wife,<br>          Appellees. | No. CV-10-00083-PHX-GMS<br>BK No. 05-10601-PHX-RJH<br>Adv. No. 07-00145-PHX-RJH<br>**ORDER** |

Currently pending before the Court is Debtor Jake's Granite Supplies, LLC ("Jake's") Appeal from the Arizona Bankruptcy Court's grant of summary judgment, entered October 26, 2009, in favor of Appellees, dismissing Jake's claims for breach of contract, negligent misrepresentation, and promissory estoppel. (Doc. 19, Ex. N). Appellants also seek review of the Bankruptcy Court's Second Amended Final Judgment (Doc. 17, Ex. C), entered January 25, 2010, awarding Appellees attorneys' fees and costs. After reviewing the pleadings and record excerpts submitted for purposes of this appeal, and having determined that oral

argument is unnecessary,[1] the Court affirms in part and denies in part the Bankruptcy Court's summary judgment order (Doc. 19), and vacates in part the Bankruptcy Court's Second Amended Final Judgment (Doc. 17).

**BACKGROUND**

Appellant Jake's is an Arizona limited liability company and former owner of a sand and gravel operation near Buckeye, Arizona. Jake's filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 13, 2005 (the "petition date"). (Doc. 17, Ex. D). In September and October 2003, Jake's entered into three separate contracts to purchase the Quackenbush, Stone, and Dycus parcels. (Doc. 19, Ex. A). Fidelity National Title Insurance Company ("Fidelity") served as the escrow agent for the purchases and issued ALTA Extended Owner's Title Insurance Policies to Jake's for the parcels.[2] According to Jake's closing instructions, Fidelity was to close escrow only upon its unconditional agreement to issue an ALTA Extended Owner's Policy with a survey endorsement for each of the parcels.[3] The extended coverage was required by Jake's lender as a condition of funding its loans. To obtain this extended coverage, Jake's was required to provide Fidelity a survey of the property that complied with ALTA/ACSM standards.

---

[1] Appellant's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] "ALTA" stands for the American Land Title Association. An ALTA Extended Owner's Policy ensures a buyer of real property against unrecorded liens, encumbrances, and other unrecorded matters that might affect title ownership to the property. (Doc. 19, Ex. B).

[3] The title policies contain the following survey endorsements: "The Company assures the Insured that said land is the same as that delineated on the plat of survey made by SNS Civil Design Group on July 23, 2004, designated Job No. 040413. The Company hereby insures said Assured against loss which said Assured shall sustain in the event that the assurance herein shall prove to be incorrect." (Doc. 19, Ex. H).

1   Clay Sourant, Jake's principal, asked General Engineering ("General") to provide an
2   ALTA survey. General contacted Appellees, SNS Civil Consultants, Inc. and Siegfried
3   (collectively referred to as "SNS"), and provided them with a "Commitment for Title
4   Insurance" (the "title commitments") prepared by Fidelity for each of the parcels.[4] Siegfried,
5   a registered surveyor employed by SNS, prepared and signed a survey entitled "ALTA/ACSM
6   Land Title Survey" (the "survey") on July 23, 2004.[5]  The survey certified that it was "made
7   in (i) accordance with "Minimum Standard Detail Requirements for ALTA/ACSM Land Title
8   Surveys,". . . and (ii) pursuant to the Accuracy Standards (as adopted by ALTA and ACSM
9   and in effect on the date of this certification)." (Doc. 19, Ex. B).  The survey further stated
10  that, "[t]he premises surveyed have no known discrepancies, boundary line conflicts,
11  encroachments, overlapping of improvements, easements or right-of-ways except as shown,
12  and has access to or from a dedicated roadway." (Doc. 17, Ex. D). Fidelity issued the ALTA
13  Extended Owner's Policies and closed escrow on the transactions on October 12, 2004.

14   Less than a year and a half later, Appellees John and Vicki Beaver (the "Beavers")
15  filed a claim in Jake's Chapter 11 case that they have title through adverse possession to
16  certain portions of real property previously owned by Jake's. The ALTA/ACSM survey had
17  not revealed the encroachments or visible appropriations that formed the basis of the Beavers'
18  adverse possession claim.[6]

---

[4] The title commitments provided a legal description of each of the parcels, identified Jake's as the purchaser of the parcels, and indicated that Jake's had ordered ALTA Extended Owner's Policies and required an ALTA/ACSM survey. It is undisputed that Jake's ordered extended policies for all three parcels, and the policies ultimately issued were for extended coverage.

[5] The parties do not dispute that both Fidelity and Jake's received the survey prior to the close of escrow even though they are unclear as to how the survey was transmitted.

[6] Pursuant to the Bankruptcy Court's Order, entered November 23, 2005, "for the requisite statutory period, Beaver adversely possessed 10.03 acres of the real property formerly owned by Jake's and ordered sold free and clear of all liens to Cemex Construction Materials, L.P. (Doc. 17, Ex. C).  The court further held that the disputed property had a

- 3 -

## DISCUSSION

**I.     Legal Standard**

Under 29 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges. The Court reviews a bankruptcy court's grants of summary judgment *de novo*. *In re Raintree Healthcare Corp.*, 431 F.3d 685, 687 (9th Cir. 2005). Summary judgment is to be granted if the pleading and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact and moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Summary judgment is generally not appropriate in negligence actions. 16 A.R.S. R. CIV. P. 56(c).

**II.    Analysis**

    **A.     Negligent Misrepresentation**

Jake's contends that SNS' failure to note the visible appropriations and encroachments on the property forms the basis of a negligent misrepresentation claim. Arizona follows the law of negligent misrepresentation set forth in the Restatement (Second) of Torts § 552(1).[7] *See Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610, 5 P.3d 940, 944 (Ct. App. 2000); *McAlister v. Citibank*, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (Ct. App. 1992). To prevail on a claim for negligent misrepresentation, Jake's must establish that SNS, in the course of

---

value of $30,000.00 per acre as of November 23, 2005, for a total value of $300,900.00. The Court affirms the Bankruptcy Court's Beaver judgment in a companion order.

[7] The Restatement (Second) of Torts §552(1) (1977) provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

- 4 -

1 its business, 1) supplied false information, 2) for Jake's guidance in its business transactions, 3) which Jake's justifiably relied on, and 4) suffered pecuniary loss as a result because 5) SNS failed to exercise reasonable care in obtaining or communicating the information. *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 313, 742 P.2d 808, 814 (1987). Liability for negligent misrepresentation is narrow in scope because it is premised on the reasonable expectations of a foreseeable user of information supplied in connection with commercial transactions. RESTATEMENT (SECOND) OF TORTS §552 cmt. a (1977). Specifically, liability for negligent misrepresentation is limited to loss suffered a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. *Id*. at §552(2).

Jake's avers that its "reliance on the Survey's false representations caused it to incur damages because, upon the close of the Escrows, Jake's became the title owner of the parcels subject to the Beavers' encroachments." (Doc. 18). Applying the Restatement to the facts of the instant case, the evidence suggests that Jake's raises material issues of fact. The parties do not dispute that SNS, in the course of its land surveying business, supplied false information for the guidance of others in their business transactions. (Doc. 19, Ex. F). Siegfried, a registered land surveyor, concedes that the survey he sealed failed to comply with ALTA/ACSM standards and that the survey certification was inaccurate. (*Id.*). Specifically, Siegfried appears to agree with expert Gary Stocker that the survey fails to comply with Paragraph 5f of the ALTA/ACSM standards.[8] (*Id.*). In his report, Stocker notes that evidence of possession, including fences, gates, cultivated farm field, irrigation ditches, and access

---

[8] Paragraph 5f of the ALTA/ACSM standards provides: "The character of any and all evidence of possession shall be stated and the location of such evidence carefully given in relation to both the measured boundary lines and those established by the record. An absence of notation on the survey shall be presumptive of no observable evidence of possession."

- 5 -

1  roads was not shown nor noted on the survey. (Doc. 19, Ex. J). These concessions are a
2  sufficient basis on which a jury might find that SNS failed to exercise reasonable care. The
3  only remaining elements for a negligent misrepresentation claim are whether Jake's justifiably
4  relied on the survey's false certification in its acquisition of the three parcels, and whether he
5  suffered a pecuniary loss as a result.

6        To determine whether a party to a transaction justifiably relied on another party's
7  representations depends on the complaining party's own information and intelligence. *St.*
8  *Joseph's Hosp. & Med. Ctr.*, 154 Ariz. at 316, 742 P.2d at 817. Jake's representative, Sourant,
9  testified that he did not understand what an ALTA survey was, but recalled requiring an
10 ALTA  survey as a condition of the lender. (Doc. 22, Ex. 2). Specifically, when Sourant was
11 asked whether Jake's relied on the survey, he answered in the affirmative and noted, "it was
12 the ALTA survey that we needed in order to be able to close on the properties." (*Id.*). In its
13 Memorandum Decision, the Bankruptcy Court held that Jake's did not satisfy the justifiable
14 reliance element because as per Sourant's testimony, "Jake's relied on the survey certification
15 only to the extent that an ALTA survey was a necessary condition to obtain the ALTA
16 extended owner's policies its bank required to fund the loans and close escrow on the
17 properties." (Doc. 19, Ex. N). In reaching this conclusion, the Bankruptcy Court relied on the
18 fact that Sourant testified to not knowing the difference between an ALTA survey and a
19 boundary-line depiction, and that, in the end, Jake's obtained the extended policies with
20 survey endorsements that it sought, thereby demonstrating that it did not rely on the survey
21 certification to its detriment. (*Id.*). The Bankruptcy Court states, "Jake's got everything it
22 contracted for and needed  – a survey sufficient for the bank to fund and to close escrow."
23 (*Id.*).

24       Nevertheless, Jake's did not get everything it contracted for or needed. Jake's
25 contracted for an ALTA survey. It did not get that. Although Sourant may not have
26 understood what the lender and Fidelity understood – that such a survey was necessary,
27 among other things, to sufficiently issue clear title to prevent the type of adverse possession
28

- 6 -

claims that occurred here – because both the lender and Fidelity understood it, there arguably would have been no closing absent an ALTA survey. Jake's did not contract with General to be its escrow agent. It contracted with General to conduct an ALTA survey. "In the absence of circumstances putting a reasonable person on inquiry, a person is justified in relying on a misrepresentation of a material fact without making further inquiry." *St. Joseph's Hosp. & Med. Ctr.*, 154 Ariz. at 316, 742 P.2d at 817 (quoting *Citizens Savings & Loan Ass'n. v. Fischer*, 214 N.E.2d 612, 616, 67 Ill. App. 2d 315, 324 (1966)). A reasonable person in Sourant's position was justified in concluding that the survey met ALTA/ACSM standards. Sourant testified that he read and relied on the survey's banner, declaring it was an "ALTA/ACSM Land Title Survey." (Doc. 19, Ex. K). The facts do not suggest that Sourant, in his capacity as Jake's representative, should have had an understanding of what the precise requirements of an ALTA survey were. Furthermore, given that Siegfried, a registered surveyor, admitted that it would be reasonable for a person looking at the survey to conclude that it was an ALTA survey, a jury could also conclude that it was reasonable for Sourant to do the same. (Doc. 19, Ex. F).

Further, the false certification was material precisely because the survey was a prerequisite to obtaining the ALTA Extended Owner's Policies, which in turn were a condition of the lender. *See St. Joseph's Hosp. & Med. Ctr.*, 154 Ariz. at 316, 742 P.2d at 817 (finding that reliance is justifiable where the misrepresentation is material); *see also Prosser and Keeton on Torts* § 108 (5th ed. 1984) (reliance exists if substantial weight was given to a representation). A reasonable jury could conclude that a lender would impose such a condition because purchasers of property, and the banks that fund them, generally want to avoid becoming the owners of, or lending money in support of, acquiring property that has faulty title or is otherwise encumbered. Therefore, to say that Jake's relied on the survey in order to close escrow necessarily implies that a faulty ALTA survey was necessary for Jake's

- 7 -

to become the title owner of encumbered property. Accordingly, Appellants have set forth a sufficient question of fact as to whether they justifiably relied on SNS' misrepresentation.[9]

Finally, the record conclusively demonstrates that Jake's suffered pecuniary loss as a result of its reliance on the survey. The Court need look no further than the Bankruptcy Court's January 25, 2010 Second Amended Final Judgment (Doc. 17, Ex. C), affirmed by this Court in a companion order, finding that 10.3 acres of the real property formerly owned by Jake's was adversely possessed, and entering judgement against Jake's in the amount of $300,900.00 with interest thereon at the rate of seven percent (7%) per year as a result of that adverse possession. The amount of the judgment against Jake's is a direct pecuniary loss because it will be deducted from its sale proceeds from the Cemex Transaction. In considering whether Jake's has stated a claim for negligent misrepresentation it is not material that Jake's was insured for that loss by Fidelity. Jake's still incurred the loss.

Accordingly, Jake's has established that there is a genuine issue as to material facts pertaining to its negligent misrepresentation claim against SNS. The Bankruptcy Court erred in granting summary judgment on this claim.

### B. **Breach of Contract**

Jake's contends that because it was the intended beneficiary of SNS' contract to perform an ALTA/ACSM survey on the parcels, it can enforce the contract and hold SNS liable for its failure to provide a survey that met the standards. While the record does not indicate the existence of a single contract, whether oral or written, between Jake's and SNS, General's fax and telephone communications with SNS containing the title commitments prepared by Fidelity constitute an offer (Doc. 19, Ex. E), SNS' performance of the ALTA

---

[9] The Court need not consider the parties' imputation of reliance arguments on the basis of a potential agency relationship between Fidelity and Jake's where the evidence on the record demonstrates that Jake's itself justifiably relied on SNS' faulty survey. But to the extent that Fidelity was Jake's agent for the close of escrow, such a relationship would be a sufficient basis on which a jury could find reliance by Jake's.

- 8 -

survey constitutes acceptance of the offer (Doc. 19, Ex. G), and consideration was afforded in the form of payment made by Jake's to General, which then paid SNS (Doc. 22, Ex. 9). *See Paczosa v. Carwright Elementary Sch. Dist. No. 83*, 222 Ariz. 73, 78, 213 P.3d 222, 227 (Ct. App. 2009) (noting that an enforceable contract requires an offer, acceptance, and consideration).

To establish a breach of contract claim as a third-party beneficiary in Arizona, 1) the contract must indicate an intention to benefit the third-party beneficiary, 2) the contemplated benefit must be both intentional and direct, and 3) it must be clear that the parties intended to recognize the third party as the primary party in interest. *Valles v. Pima County*, 642 F.Supp.2d 936, 956 (D. Ariz. 2009) (citing *Norton v. First Fed. Sav.*, 128 Ariz. 176, 178, 624 P.2d 854, 856 (1981)). In accord with the Restatement, Arizona law establishes that a third party intended beneficiary is found where "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties," and "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." RESTATEMENT (SECOND) OF CONTRACTS § 302 (1982); *see also Supplies for Indus., Inc. v. Christensen*, 135 Ariz. 107, 109, 659 P.2d 660, 662 (Ct. App. 1983).

While the Bankruptcy Court finds that there was a contract between General and SNS, it concludes that Jake's was not a third-party beneficiary of that contract because "mere knowledge that Jake's was the purchaser and required an ALTA survey to obtain ALTA extended owner's policies for the property is not sufficient to establish Jake's as the intended third-party beneficiary." (Doc. 19, Ex. N). The court further notes that "the record does not support a conclusion that SNS provided the survey with the expressed intent to directly benefit Jake's as the primary party in interest of the contract when the survey references only Fidelity and not Jake's." (*Id*.). We respectfully disagree.

The evidence suggests that Jake's has raised material issues of fact as to whether SNS intended to benefit Jake's in supplying the ALTA survey. The fax cover sheets and title commitments which were sent to SNS prior to the survey named Jake's as the purchaser and

- 9 -

indicated that Jake's required an ALTA survey to obtain extended coverage from Fidelity. (Doc. 19, Ex. E). Specifically, the fax cover sheet from General to SNS stated the following in its subject line: "ALTA's for Clay Sourant." (*Id.*). As part of the fax transmittal, SNS also received three separate cover sheets, one preceding each title commitment, which read: "Title report for survey, Quackenbush to Jake's Granite," "Title report for survey, Stone to Jake's Granite," and "Title report for survey, Seller-Dycus, Buyer-Jake's Granite." (*Id.*). In his deposition, Siegfried agreed that the statements on these fax cover sheets would indicate that there was a sale transaction in which Quackenbush, Stone, and Dycus were the sellers and Jake's was the buyer. (Doc. 19, Ex. F). He further agreed that such title commitments would be issued in connection with escrows relating to transactions of real property. (*Id.*). Furthermore, the title commitments sent to SNS explicitly named Jake's as the "proposed insured" and indicated that the policy being requested was an ALTA Extended. (Doc. 19, Ex. E). Siegfried further agreed that this notation indicated that Jake's was the buyer of the property and that it wanted to obtain extended coverage for its purchases. (Doc. 19, Ex. F).

Based on the aforementioned facts and the nature of the contract between General and SNS, the fax cover sheets and title commitments are sufficient evidence on which a jury might find that SNS explicitly intended to benefit Jake's by performing the survey. The fact that the survey itself does not make reference to Jake's was not a sufficient basis on which the Bankruptcy Court could conclude that Jake's was not a third-party beneficiary as a matter of law. A genuine issue of material fact exists at to whether Jake's is a third-party beneficiary to the contract between General and SNS, precluding summary judgment in favor of SNS on Jake's breach of contract claim.

### C.     **Promissory Estoppel**

To succeed on its promissory estoppel claim, Jake's must prove that 1) SNS made a promise, 2) on which they should have reasonably foreseen that Jake's would rely, and 3) that Jake's did actually rely on the promise to its detriment. *See Higginbottom v. State*, 203 Ariz. 139, 144, 51 P.3d 972, 977 (Ct. App. 2002). Appellants contend that Jake's was a third-party

beneficiary to SNS' promise to perform a survey complying with ALTA/ACSM standards and detrimentally relied on this promise. Jake's promissory estoppel claim can not withstand summary judgment because the representations and certifications on SNS' survey do not qualify as a promise, undermining the first enumerated element of the claim.

Arizona law distinguishes equitable estoppel from promissory estoppel by clarifying, in part, that the latter "generally does not involve a misrepresentation but a promise by one party upon which another relies to his detriment and which the promisor should reasonably have foreseen would cause the promisee to so rely." *Arnold & Assoc., Inc. V. Misys Healthcare* Sys., 275 F.Supp. 2d 1013 (D. Ariz. 2003) (quoting *Tiffany Inc. V. W.M.K. Transit Mix, Inc.*, 16 Ariz. App. 415, 410, 493 P.2d 1220, 1224 (Ct. App. 1972)). Promissory estoppel "operates not in regard to a past or presently existing state of facts, but rather to a situation which one party promises will be true in the future." *Id*. (citing *Waugh v. Lennard*, 69 Ariz. 214, 211 P.2d 806 (1949)); *Trollope v. Koerner*, 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970) (finding that promissory estoppel rests upon a promise to do something in the future). The Restatement (Second) of the Law of Contracts §90 (1981), which Arizona follows, enunciates this doctrine as:

> A promise which the promisor should reasonably except to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Chewning v. Palmer*, 133 Ariz. 136, 138, 650 P.2d 438, 440 (1982). Here, the ALTA/ACSM survey performed by SNS depicted, albeit imperfectly, the "presently existing" state of the property on July 23, 2004, the date of the survey. SNS' Certification on the survey rested on a statement of present fact, not an express promise to Jake's regarding the future. Because Appellants cannot satisfy the "promise" element of promissory estoppel, the Appellants' promissory estoppel argument must fail, and the Court need not analyze the remaining

- 11 -

1  elements. Accordingly, the Bankruptcy Court's summary judgment finding on Jake's
2  promissory estoppel claim is affirmed.

3  **III.   Attorneys' Fees**

4      Jake's next argues that the Bankruptcy Court erred in its award of attorneys' fees to
5  SNS on the negligent misrepresentation claim pursuant to A.R.S. §12-341.01(A). The court
6  awarded SNS attorneys' fees and costs in the amount of $87,740.29, with interest at the
7  statutory rate of .41% accruing from January 3, 2010. (Doc. 17, Ex. C). The Court will not
8  disturb a bankruptcy court's award of attorney fees unless the bankruptcy court abused its
9  discretion or erroneously applied the law. *In re Strand*, 375 F.3d. 854, 857 (9th Cir. 2004)
10 (quoting *In re Kord Enters. II*, 139 F.3d 684, 686 (9th Cir. 1998)).

11     In light of the Court's reversal of the Bankruptcy Court's summary judgment findings
12 with respect to Jake's breach of contract and negligent misrepresentation claims, the
13 attorneys' fees award to SNS is vacated and remanded for further proceedings.

**CONCLUSION**

14     For the reasons explained above, the Bankruptcy Court's summary judgment
15 finding on Jake's promissory estoppel claims is affirmed, and summary judgment on the
16 breach of contract and negligent misrepresentation claims are denied. Accordingly,

17     **IT IS HEREBY ORDERED** that the Bankruptcy Court's October 26, 2009
18 Memorandum Decision (Doc. 19, Ex. N) is **AFFIRMED IN PART, AND DENIED IN**
19 **PART**.

20     **IT IS FURTHER ORDERED** that those aspects of the January 25, 2010 Second
21 Amended Final Judgement of the Bankruptcy Court (Doc. 17, Ex. C) that award Appellees
22 attorneys' fees and costs are **VACATED**.[10]

---

[10] In a companion order, the Court affirms that part of the Bankruptcy Court's Second Amended Final Judgment (Doc. 17, Ex. C), ordering judgment in favor of Defendants John and Vicki H. Beaver in the amount of $300,900.00, with interest at the rate of seven percent (7%) per year accruing from November 23, 2005, until paid in full.

- 12 -

1    **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **REMAND**
2 for further proceedings consistent with this Order.

3    DATED this 13th day of December, 2010.

*H. Murray Snow*
G. Murray Snow
United States District Judge

- 13 -